IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYLE NELSON and KRISTI NELSON,

        Plaintiffs,                      10cv1007

                                             **ELECTRONICALLY FILED**

   v.

GENESEE & WYOMING INC. and BUFFALO
& PITTSBURGH RAILROAD,

        Defendants.


### MEMORANDUM OPINION

      This breach of contract and negligence case brought by pro se Plaintiffs, Kyle and Kristi

Nelson, alleges that Defendants, Genessee & Wyoming Inc. and Buffalo & Pittsburgh Railroad,

promised – but failed to provide – Plaintiff Kyle Nelson with an engineer job.  Plaintiffs claim

that they relocated from Oregon to Pennsylvania based largely upon written representations

about an engineer job set forth in a letter signed by Plaintiff Kyle Nelson and a representative of

the Defendants.[1]  It is undisputed that after relocating to Pennsylvania, Defendants trained

Plaintiff Kyle Nelson for an engineer position, but did not make the engineer job immediately

available to him.

      Defendants have filed a Motion to Dismiss the Complaint arguing primarily that this

Court lacks subject matter jurisdiction, and secondarily, that all of Plaintiffs' claims fail as matter

of law. For the foregoing reasons, this Court shall grant in part and deny in part Defendants'

Motion to Dismiss.

---

[1] This letter (hereinafter referred to as "the employment letter") was attached to Plaintiffs' complaint and may thus
be properly considered for purposes of deciding this Motion to Dismiss as shall be discussed in greater detail below.

## I. Applicable Standards of Review

Defendants filed their motion to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

### A. Federal Rule of Civil Procedure 12(b)(1) – Facial versus Factual Attack

Federal Rule of Civil Procedure 12(b)(1) allows a party to attack subject matter jurisdiction on either facial grounds – based solely on the allegations in the Complaint – or factual grounds – looking beyond the allegations to attack jurisdiction in fact. See Johnson v. Novastar Mortg., Inc., 698 F.Supp.2d 463 (D.N.J. 2010) citing, Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir.1977) (there is "a crucial distinction . . . between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from the pleadings.").

When considering a facial attack, a court does not look outside of the Complaint and "must consider the allegations of the complaint as true . . . [with] all inferences [favorably drawn] to plaintiff." Mortensen, 549 F.2d at 891; see also 27A Fed. Proc. §62:440 (The facial attack is addressed to the sufficiency of the allegations of the complaint itself.  On such a motion, the court is merely required to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the factual allegations of the complaint are taken as true.).

When considering a factual attack, the Court has much broader authority and can review evidence outside the pleadings without changing the motion into a motion for summary judgment under Fed.R.Civ.P. 56.  Mortensen, 549 F.2d at 891.  The presumption of truthfulness does not attach, the burden of persuasion is on the plaintiff, and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Id.  If a defendant sets forth any evidence challenging any assertions

made in the pleadings, the presumption of truthfulness does not attach, and the plaintiff can "respond with evidence supporting jurisdiction." <u>Gould Elec. Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000) (citation omitted).

## B. Federal Rule of Civil Procedure 12(b)(6)

When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atlantic Co. v. Twombly</u>, 550 U.S. 544, 555 (2007) (cites and footnote omitted). See also <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state a claim to relief that is plausible on its face. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 at 570)). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. <u>Id</u>. at 1949. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Iqbal</u>, 129 S.Ct. at 1950 (quoting <u>Twombly</u>, 550 U.S. at 555)); see also <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

It is on these standards that this Court has reviewed defendants' Motion to Dismiss Plaintiffs' complaint.

## II. Factual Background

Plaintiff Kyle Nelson (Nelson) was employed as an engineer with Portland & Western Railroad, a Genesee & Wyoming company, based out of Albany, Oregon. Doc. no. 1-1, at ¶3. Because "work was sparse" Nelson began searching for employment through Genesee & Wyoming's website and Nelson located an open engineer position with Defendant Buffalo & Pittsburgh Railroad (B&P), also a Genesee & Wyoming company. Id. Nelson called Dan Pavick (Pavick) of B&P and expressed his interest in the position. Id. Pavick suggested that Nelson apply for an open general manager position with B&P. Id.

Although Nelson was later informed by Cassandra Schreiber (Schreiber), a "Human Resources officer of the defendant," that he did not receive the general manager position, he was offered an engineer position with B&P in Dubois, Pennsylvania. Id. at ¶5. If Nelson accepted the offer, he would receive a $5,000 relocation expense. Id. Nelson said he was interested in the position, "as long as he would be working as an engineer, not a conductor." Id. Nelson also stated he wanted a writing to "clearly state he was moving to Pennsylvania to work as an engineer, not a conductor." Id. By way of letter dated March 15, 2010, Defendants' representative, Schreiber, specified the "offer of employment [was] as an Engineer . . . [at] 90% of the Engineer daily rate. Id. See also Doc. no. 1-1, Ex. A. Pursuant to the agreement, Nelson and his family subsequently relocated to Pennsylvania. Doc. no. 1-1, at ¶6.

Nelson worked as a "student engineer" with B&P from April 7, 2010, to May 26, 2010. Id. at ¶9. The following day, Nelson was told by the crew caller that he "did not have any training sites for [Nelson] to report to." Id. at ¶10.

On June 2, 2010, Nelson spoke with the crew caller and was informed he needed to speak with Pavick. Id. at ¶11. Pavick told Nelson he would have to work as a conductor "for six to

twelve months" because of "the union contract." Id. Nelson was unaware of a union contract. Id.

Nelson informed Pavick that he "didn't want to work and was unable to work as a conductor for six months or longer and that was why [he] specifically stated in [his] contract [with B&P] that he was to work as an engineer, not a conductor." Id. Pavick also informed Kyle that he would still receive an engineer's pay while working as a conductor. Id. Pavick agreed to meet Nelson later in the day and supply him with a copy of the union contract. Id.

On June 3, 2010, Pavick informed Nelson that "he had to work as a conductor or resign." Id. at ¶13. Nelson stated he would not work as a conductor, nor would he resign. Id. Nelson contacted Schreiber and stated B&P was in breach of contract. Id.

The following day, Nelson again spoke with Schreiber and wanted to know if there were any additional options. Id. at ¶14. On approximately June 9, 2010, Niels Hanson, B&P's Vice President of Employee and Labor Relations and Bridget Shepard, B&P's head of Human Resources, called Nelson and gave him three options. Id. They said Nelson could consider returning to Oregon, work as a conductor in Pennsylvania, or potentially take a position in Ohio. Id.

Nelson considered the Ohio job, but determined it paid "approximately $19,000 per year less than the pay promised in the parties' contract . . . [and] the cost of living would be a 17% increase." Id. at ¶18. Nelson e-mailed Schreiber and said the company must honor its March 15, 2010, "contract" with him or find "a mutually acceptable compromise." Id. at ¶19. On June 29, 2010, Nelson was informed by Schreiber that "the company was severing his employment . . . [based on] the 90-day policy." Id. at ¶20.

### III. Analysis

#### A. Federal Rule of Civil Procedure 12(b)(1)

Defendants claim they do not challenge truth of the facts alleged in the Complaint thereby implying a Fed.R.Civ.P. 12(b)(1) facial attack. Doc. no. 6, ¶4. However, Defendants' 12(b)(1) Motion to Dismiss introduces evidence outside the pleadings and uses these documents in an attempt to prove that no employment contract existed – contrary to what is pled in the Complaint. Specifically, Defendants introduce the Collective Bargaining Agreement (CBA) between B&W and the United Transportation Union and the Genesee and Wyoming Employee Corporate Handbook (Handbook). Doc. nos. 6-4 and 6-5. Thus, although Defendants never specified whether they were advancing a 12(b)(1) facial or factual attack, this Court finds their jurisdictional attack to be factual. Defendants' argument attacks jurisdiction independent of the pleadings.

Under a 12(b)(1) factual attack, this Court is permitted – and did – review the March 15, 2010, letter and June 29, 2010, email attached to Plaintiffs' Complaint as well as the CBA and Handbook attached to Defendants' Motion to Dismiss. See Doc. no 1-1 Ex. A, B; Doc. nos. 6-4 and 6-5; Mortensen, 549 F.2d at 891 (allowing a court to review evidence outside the pleadings without changing motion into motion for summary judgment).

Defendants argue that this Court lacks jurisdiction, claiming that the CBA governs the rights and obligations of Nelson and Defendants. Defendants' further contend that this Court lacks jurisdiction because the rights and obligations of the parties under the CBA should be arbitrated under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* [2]

---

[2] The Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, provides "'for the prompt and orderly settlement of all disputes growing out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.'" Capraro v. United Parcel Serv. Co., 993 F.2d 328, 331 (3d Cir. 1993) (quoting Ass'n of Flight Attendants, AFL-CIO v. USAir, 960 F.2d

The RLA requires mandatory arbitration of "minor disputes." A "minor dispute" seeks to enforce contractual rights already contained in an existing collective bargaining agreement. Hawaiian Airlines, 512 U.S. at 252 (citation omitted). See also Capraro, 993 F.2d at 331; Ass'n of Flight Attendants, 960 F.2d at 347.

Plaintiffs' claim that Defendants' breached a separate contract – referring to the letter dated March 15, 2010 – not the CBA. Plaintiffs stress that this contract promised Nelson a very specific job (that of "engineer") with B&P. Defendants' essentially argue that only the CBA could provide Nelson with a guarantee of such specific employment. However, in light of the evidence presently before this Court, specifically, the March 15, 2010 letter, signed by Defendants' representative, Defendants' assertion is questionable.

Because the evidence before this Court, at this point in time, calls into question whether the CBA is the exclusive means that controls when and how a person such as Nelson obtains an "engineer" position, this Court finds that it presently has subject-matter jurisdiction.

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is denied.

---

345, 347 (3d Cir. 1992)). To achieve this goal, the RLA established a mandatory arbitral tribunal to cover two classes of disputes. See e.g. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (citing Atchison, T. & S.F.R. Co. v. Buell, 480 U.S. 557, 562 (1987)). The first class involves "rates of pay, rules or working conditions" deemed "major disputes." Id. These "major disputes" involve "the formation of collective [bargaining] agreements or efforts to secure them." Id. The second class involves disputes "growing out of grievances or out of interpretation or application of agreements covering rates of pay, rules, or working conditions" deemed "minor disputes." Id. at 252-253. This class involves "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Id. at 253. Thus, a "major dispute" concerns the "creation of contractual rights," while a "minor dispute" seeks to enforce contractual rights already contained in an existing collective bargaining agreement. Id. See also Capraro, 993 F.2d at 331; Ass'n of Flight Attendants, 960 F.2d at 347.

**B.**     **Federal Rule of Civil Procedure 12(b)(6)**

    **1.**     **Breach of Contract**

Given the presumption in Pennsylvania that all employment is at-will, existence of a contract in the employment context is particularly important. See <u>Knox v. Bd. Of School Directors of Susquenita School Dist.</u>, 888 A.2d 640, 647 (Pa. 2005) (Pennsylvania has long subscribed to the at-will employment doctrine. Exceptions to the doctrine have generally been limited to instances where a statute or contract limits the power of an employer unilaterally to terminate the employment relationship.). The at-will employment doctrine "holds that an employer may terminate an employee for any reason at all, unless restrained by contract." <u>Sullivan v. Chartwell Inv. Partners, LP</u>, 873 A.2d 710, 716 (Pa.Super. 2005) (citation omitted). The doctrine creates a strong presumption that a contractual employment relationship does not exist, and it impedes an employee's ability to bring a cause of action for the termination of the employment relationship. <u>Id.</u>

Recently, in <u>Scott v. Infostaf Consulting, Inc</u>., Judge Ambrose of this District noted: To prove a claim for breach of contract under Pennsylvania law, a plaintiff must show "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." 2009 WL 3734137, *3 (W.D.Pa., November 6, 2009); accord in <u>Woods v. Era Med LLC</u>, 677 F.Supp.2d 806, 816 (E.D. Pa. 2010) (citing, <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572, 580 (Pa.Super.Ct. 2003)). In addition, under Pennsylvania law, to rebut the presumption of at-will employment, a party to the contract "must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an

applicable recognized public policy exception."   Janis v. AMP, Inc., 856 A.2d 140, 144 (Pa.Super. 2004).

Under the facts of this case, Defendants challenge Plaintiffs' breach of contract and promissory estoppels claims, suggesting that under Pennsylvania law, Nelson was an employee-at-will, without either a statute or an employment contract to indicate otherwise.  Plaintiffs counter that the March 15, 2010 letter attached to the complaint is an employment contract as defined by Pennsylvania law.  Under Fed.R.Civ.P.12(b)(6), this Court may consider documents integral to, or explicitly relied upon by the Complaint without converting the Motion to dismiss into a Motion for Summary Judgment.

In order to prevail, Plaintiffs must rebut the presumption that Nelson is an at-will employee by demonstrating that the March 15, 2010 letter is  a contract which contains either: (1) a definite duration,  (2) a clause specifying Nelson can be discharged for "just cause only," or (3) sufficient additional consideration.[3]

Starting with the first option, Plaintiffs contend the March 15, 2010 letter is a contract because it contains a definite duration – six months.  However, the only mention of the term "six months" is made in connection with what will happen to the relocation fee paid to Nelson if he quits within six months.  The letter states in pertinent part (under a heading labelled "Relocation"), "[i]n addition, it is further understood that if you are to leave the employment of the Buffalo & Pittsburgh Railroad on your own accord within six months from your start date, with our railroad, you will be required to payback [sic.] a prorated portion of the relocation allowance at that time."   The "six months" reference does not create an employment contract of definite duration.

---

[3] The plaintiffs did not contend, not does this Court find an applicable recognized public policy exception.

Next, there is no indication anywhere within the March 15, 2010 letter that Nelson can be discharged for just cause only. Simply put, the letter is silent on this matter. For this reason alone, the Court finds that there is no evidence that the March 15, 2010 letter rises to the level of an employment contract because it is devoid of a "just cause" clause.

Finally, Plaintiffs argue that there is sufficient additional consideration present here evidenced in the form of their relocation from Oregon to Pennsylvania. While this Court takes no position as to whether a cross-country move of this nature could be construed as "additional consideration," the Court notes that Plaintiffs were paid $5,000 to cover their expenses associated with relocation, thus diminishing the strength of the Plaintiffs' argument that their relocation constituted additional consideration.

Based on the foregoing, this Court finds that Plaintiffs are not able to rebut the presumption of Nelson's at-will employee status. Accordingly, this Court will grant Defendants' Motion to Dismiss Plaintiffs' breach of contract claim.

## 2. Promissory Estoppel

Plaintiffs' Complaint further alleges that Plaintiffs relied to their detriment on the Defendants' representation that Nelson would work as a engineer. Pennsylvania has long recognized promissory estoppel as a vehicle by which a promise may be enforced in order to remedy an injustice. See <u>Fried v. Fisher</u>, 328 Pa. 497, 196 A. 39 (1938). Pennsylvania has adopted the statement of this doctrine as it appears in section 90 of the Restatement (Second) of Contracts (1979). See <u>Murphy v. Burke</u>, 454 Pa. 391, 311 A.2d 904 (1973). Section 90, in pertinent part, provides:

Promise Reasonably Inducing Action or Forbearance

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third

person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

In their Motion to Dismiss, Defendants contend that due to Nelson's at-will status, Plaintiffs' promissory estoppel claim must also be dismissed because Pennsylvania does not recognize a cause of action for promissory estoppel as an exception to at-will employment. Plaintiffs counter by arguing that even if this Court were to conclude that Nelson was an at-will employee (as it has), Nelson's wife would still have a valid promissory estoppel claim in her own right.[4]

An employee may be discharged with or without cause, and our law does not prohibit firing an employee for relying on an employer's promise. See Paul v. Lankenau Hosp., 569 A.2d 346 (Pa. 1990) (equitable estoppel asserted); and Dyche v. Bonney, 277 Fed.Appx. 244 (3d Cir. 2008) (the holding in the Paul case was not narrowly confined to equitable estoppel; rather, the Paul case rejected the theory that detrimental reliance in general could be an exception to the employment at-will doctrine.).

Because this Court has found that Nelson was an at-will employee, he is precluded from asserting a promissory estoppel claim under Pennsylvania law. Nelson's wife has no claim for promissory estoppel because it was her husband, not her, who was the promissee. Accordingly, Defendants' Motion to Dismiss the promissory estoppel claim will be granted and this claim shall be dismissed.

_____

[4] Plaintiffs also argued that because "no [engineer] job ever existed in the first place," Nelson could not be an employee-at-will. However, Plaintiffs state in their Complaint that Nelson worked for Defendant B&P from April 7, 2010 to May 26, 2010 as a "student engineer" and thus, this Court concludes that he was an employee. Doc. no. 1-1, at ¶9.

### 3. Tort Claims

Defendants argue that Plaintiffs' two tort claims – fraudulent and negligent misrepresentation – must be dismissed based upon Pennsylvania's gist of the action doctrine. This doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002) (citation omitted). Because the breach of contract claim has been dismissed, Defendants' gist of the action argument is moot, and Plaintiffs fraudulent and negligent misrepresentation claims may proceed. Accordingly, Defendants' Motion will be denied in this regard.

### 4. Causes of Action against Defendant Genesee & Wyoming

Defendants contend that Plaintiffs failed to raise any allegations against Defendant Genesee & Wyoming (G&W) thereby entitling G&W to dismissal under Fed.R.Civ.P. 12(b)(6). Contrary to Defendants' assertions, Plaintiffs' Complaint alleges that he used the G&W website to locate the engineer position at B&P. Doc. no. 1-1, at ¶3. Plaintiffs' Complaint also alleges that an engineer job did not really exist, and thus implies that G&W made some sort of misrepresentation through its website. Id. at ¶12.

In addition, this Court notes that Defendants admit that G&W is the parent company of B&P. Plaintiffs attached the March 15, 2010 letter written on "B&P - a Genesee & Wyoming Company" letterhead. The letter was signed by Schreiber, the "Human Resource Manager NY/PA Region." The "Handbook" which is referenced in this March 15, 2010 letter, and upon which Defendants have already relied (in part) in defense of Plaintiffs' claims, is G&W's Employee Handbook.

Given the allegations made by Plaintiffs in their Complaint, coupled with the evidence attached to the Complaint and the Motion to Dismiss, this Court finds it would be premature to dismiss G&W at this stage of the proceedings and declines to do so. Defendants' Motion shall be denied in this regard. An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties

KYLE AND KRISTI NELSON
204 Graffius Ave
Punxsutawney, PA 15767