IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYLE NELSON and KRISTI NELSON,

    Plaintiffs,                          10cv1007
                                           **ELECTRONICALLY FILED**

    v.

GENESEE & WYOMING INC. and BUFFALO
& PITTSBURGH RAILROAD,

    Defendants.

**MEMORANDUM OPINION AND ORDER OF COURT DENYING
MOTION FOR SUMMARY JUDGMENT (DOC. NO. 27)**

**I.    Introduction**

Plaintiff Kyle Nelson ("Kyle"), a former employee of Buffalo & Pittsburgh Railroad ("B&P") and plaintiff Kristi Nelson ("Kristi"), his wife, brought a four-count complaint (doc. no. 1-1) against defendants Genesee & Wyoming, Inc. ("G&W") and B&P alleging breach of contract and misrepresentation in connection with Kyle moving from Oregon to Pennsylvania to take an engineer position with defendants that allegedly never existed. Defendants filed a Motion to Dismiss the Complaint (doc. no. 6), which this Court granted in part, with regards to the contract claims, and denied in part, with regards to the misrepresentation claims.

Defendants have filed a Motion for Summary Judgment (doc. no. 27), Memorandum in Support thereof (doc. no. 29), and Statement of Undisputed Facts (doc. no. 28). Defendants argue that plaintiffs' misrepresentation claims fail as a matter of law because plaintiffs cannot satisfy the necessary elements. In particular, defendants assert there was no misrepresentation made, plaintiffs cannot show any justifiable reliance in an at-will employment context, or proximate cause because Kyle's damages stem from the termination of his job with B&P. Additionally, defendants appear to argue the misrepresentation claims are barred by the gist of

1

the action doctrine, as the tort claims are predicated on the same conduct as the contract claims, which this Court dismissed.

Plaintiffs respond with a Memorandum in Opposition to Motion for Summary Judgment (doc. no. 32) and Response to Concise Statement of Material Facts (doc. no. 34). Plaintiffs argue that justifiable reliance in an at-will employment context is immaterial to their tort claims because the job offer and misrepresentations about the engineering job were made prior to Kyle becoming an at-will employee of B&P. Plaintiffs additionally argue that proximate cause can be shown because their damages stem from Kyle's resignation from his previous job and reliance on his new engineer position with B&P. Lastly, plaintiffs assert that defendants' gist of the action theory is flawed because the tort claims are separate and distinct from the contract claims.

After careful consideration of the Motion for Summary Judgment (doc. no. 27), Memorandum in Support thereof (doc. no. 29), and Statement of Undisputed Facts (doc. no. 28), plaintiffs' Responses thereto (docs. nos. 32, 34), and defendants' Reply Brief (doc. no. 38), the Court will deny the Motion for Summary Judgment for the reasons that follow.

## II. Applicable Standard of Review

### A. Federal Rule of Civil Procedure 56(c)(2)

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c)(2); *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004). In reviewing a motion for summary judgment, the role of the court is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 581 (3d Cir. 2009). If so, summary judgment will not be granted.

The district court must view all of the facts in the light most favorable to the non-moving party, who is entitled to "every reasonable inference that can be drawn from the record," and if "there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (quoting *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) and *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). A party cannot, however, defeat a motion for summary judgment by pointing to fragmentary inferences that could be massaged to support her position. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. Factual Background

Plaintiff Kyle was employed as an engineer with Portland & Western Railroad, a G&W company, based out of Albany, Oregon. Statement of Undisputed Facts (doc. no. 28 ¶ 1). Because "work was sparse" Kyle began searching for employment through G&W's website and Kyle located an open engineer position with B&P, also a G&W company. *Id.* at ¶ 2. The job posting for this position stated in the job description that the successful applicant "[m]ay perform work as a Conductor." *Id.* at ¶ 3.

Kyle called Dan Pavick ("Pavick") of B&P and expressed his interest in the position. *Id.* at ¶ 4. Pavick suggested that Kyle apply for an open general manager position with B&P. *Id.* Although Kyle was later informed by Cassandra Schreiber ("Schreiber"), a "Human Resources officer of the defendant," that he did not receive the general manager position, he was offered an engineer position with B&P in Dubois, Pennsylvania. *Id.* at ¶ 5. If Kyle accepted the offer, he would receive a $5,000 relocation expense. *Id.*

3

Kyle said he was interested in the position, "as long as he would be working as an engineer, not a conductor." *Id.* at ¶ 6. Kyle also stated he wanted a writing to "clearly state he was moving to Pennsylvania to work as an engineer, not a conductor." *Id.* By way of letter dated March 15, 2010, Defendants' representative, Schreiber, specified the "offer of employment [was] as an Engineer . . . [at] 90% of the Engineer daily rate. *Id.* at ¶ 7. The letter did not guarantee or promise that Kyle would not be required to perform any duties as a conductor. *Id.* at ¶ 8. Pursuant to the agreement, Nelson and his family subsequently relocated to Pennsylvania and received the $5,000 relocation allowance. *Id.* at ¶ 9.

Defendants state that Kyle was given a seniority date on B&P's engineer roster (doc. no. 28 ¶ 10), while plaintiffs state Kyle was never given a seniority date, only "*told* he was given a seniority date." (doc. no. 34 ¶ 10). Within the railroad industry, an employee who has an engineer seniority date may still be "required to work as a conductor periodically, especially on an extra board." *Id.* at ¶ 11. It is also well-settled that within the railroad industry the term "engineer position" means "an engineer seniority date which permits an employee to work as an engineer and to bid to specific jobs in preference to any junior employees on the roster, but does not guarantee that the employee will only perform engineer duties." *Id.* at ¶ 12. Rule 3.4 of the CBA states that an employee acquires an engineer seniority date "at the time they enter service as an engineer." *Id.* Rule 4.5 states that "all employees are subject to displacement by other employees with greater seniority, and Rule 4.4 provides that an engineer who is displaced and cannot exercise seniority in engine service may be required to work in ground service (as a conductor or brakeman)." *Id.* Rules 7.4 and 7.6 "provide that an engineer may exercise seniority rights in ground service if unable to work as an engineer." *Id.*

Defendants state that the phrase "engineer position" means that an individual "is given the right to work as an engineer to the extent that the individual is able to exercise seniority." *Id.* at ¶ 13. Plaintiffs state the phrase also is defined "by the wages that the person will earn in that craft." (doc. no. 34 ¶ 13).

Defendants also state that Kyle was an at-will employee with B&P, meaning that he could be terminated at time and for any reason. (doc. no. 28 ¶ 14). Plaintiffs deny this material fact. (doc. no. 34 ¶ 14).

Kyle worked as a "student engineer" with B&P from April 7, 2010, to May 26, 2010. (doc. no. 28 ¶ 15). The following day, Nelson was told by the crew caller that he "did not have any training sites for [Nelson] to report to." *Id.*

On June 2, 2010, Kyle spoke with the crew caller and was informed he needed to speak with Pavick. *Id.* at ¶ 16. Defendants state that Pavick told Kyle he would have to work as a conductor for "six to twelve months" because of "the union contract." *Id.* Plaintiffs asserts Pavick told Kyle he would have to work under the craft of conductor. (doc. no. 34 ¶ 16). Nelson stated that he had not received a copy of the union contract. (doc. no. 28 ¶ 16).

Kyle informed Pavick that he "didn't want to work and was unable to work as a conductor for six months or longer and that was why [he] specifically stated in [his] contract [with B&P] that he was to work as an engineer, not a conductor." *Id.* at ¶ 17. Pavick also informed Kyle that he would still receive an engineer's pay while working as a conductor. *Id.* at ¶ 18. Pavick agreed to meet Nelson later in the day and supply him with a copy of the union contract. *Id.*

On June 3, 2010, Pavick informed Nelson that "he had to work as a conductor or resign." *Id.* at ¶ 19. Nelson stated he would not work as a conductor, nor would he resign. *Id.* Nelson contacted Schreiber and stated B&P was in breach of contract. *Id.*

The following day, Nelson again spoke with Schreiber and wanted to know if there were any additional options. *Id.* at ¶ 20. On approximately June 9, 2010, Niels Hanson, B&P's Vice President of Employee and Labor Relations and Bridget Shepard, B&P's head of Human Resources, called Nelson and gave him three options. *Id.* at ¶ 21. They said Nelson could consider returning to Oregon, work as a conductor in Pennsylvania, or potentially take a position in Ohio. *Id.*

Nelson considered the Ohio job, but determined it paid "approximately $19,000 per year less than the pay promised in the parties' contract . . . [and] the cost of living would be a 17% increase." *Id.* at ¶ 22. Nelson e-mailed Schreiber and said the company must honor its March 15, 2010, "contract" with him or find "a mutually acceptable compromise." *Id.* at ¶ 23. On June 29, 2010, Nelson was informed by Schreiber that "the company was severing his employment . . . [based on] the 90-day policy." *Id.* at ¶ 24.

## IV. Analysis

**Fraudulent and Negligent Misrepresentation Claims**

In order to prove fraudulent misrepresentation, a plaintiff must prove: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

In order to prove negligent misrepresentation, a plaintiff must prove: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) the injury must result to the party acting in justifiable reliance on the misrepresentation." *Id.* at 890.

Defendants argue that plaintiffs cannot show any justifiable reliance because Kyle was at at-will employee. (doc. no. 29 ¶ 11). Plaintiffs counter that such an argument is irrelevant to the tort claims because the "job offer and representations made about the job were made prior to Kyle becoming an at will employee of the BP." (doc. no. 32 ¶ 3). Defendants then argue that plaintiffs cannot show any proximate cause because Kyle's damages stem from the termination of his job with B&P. (doc. no. 29 ¶ 17). Plaintiffs counter that their damages stem from Kyle's resignation from his prior job in Oregon to take the engineer position in Pennsylvania. (doc. no. 32 ¶ 12).

Defendants also assert that no misrepresentations were made to Kyle and Kyle received the "engineer position" he applied for. (doc. no. 29 ¶ 19). Plaintiffs respond that Kyle never received "engineer status," as promised in the employment letter. (doc. no. 32 ¶ 15). Lastly, defendants appear to argue the misrepresentation claims are barred by the gist of the action doctrine, as the tort claims are predicated on the same conduct as the contract claims, which this Court dismissed. (doc. no. 22). Plaintiffs assert that defendants' bootstrapping theory is flawed because the tort claims are separate and distinct from the contract claims. (doc. no. 32 ¶ 17-8).

Defendants' arguments and plaintiffs' counterarguments turn on disputed material facts as to what the parties understood by "engineer" and "engineer position" and whether Kyle actually received "engineer status" when he moved from Oregon to Pennsylvania. These factual disputes must be resolved by the finder of fact, the jury. As to the "gist of the action" doctrine, this Court previously ruled that this issue is moot, given the Court's ruling dismissing the contract claims, and defendants have offered no compelling reason why the Court should revisit the issue.

For the foregoing reasons, defendants' Motion for Summary Judgment (doc. no. 27) is HEREBY DENIED.

**SO ORDERED this 22nd day of November, 2010**

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

KYLE NELSON AND KRISTI NELSON
204 Graffius Ave
Punxsutawney, PA 15767